# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

LENEXA HOTEL, LP,           )
                                 )
         Plaintiff         )
                                 )     No. 2:15-CV-09196-KHV
vs.                           )
                                 )
HOLIDAY HOSPITALITY FRANCHISING,  )
INC.,                      )
                                 )
         Defendant      )

## STIPULATION AND ORDER
## REGARDING DOCUMENT PRODUCTION FORMAT

To secure a "just, speedy, and inexpensive determination" of this action, Holiday Hospitality Franchising, Inc. and Plaintiffs, parties to this action, by and through their undersigned attorneys, hereby agree and stipulate to the following protocol for the production of all electronic information and papers documents in this action:

## I.     GENERAL TERMS

A.     Electronically stored information ("ESI") will be part of the discoverable material in this case and the parties agree to cooperatively exchange in reasonably usable form as described below non-privileged discoverable material and use reasonable and proportional efforts to identify, preserve, collect, and produce relevant information.

B.     In keeping with proportional and cost-effective discovery, the parties agree to identify appropriate limits to discovery, including limits on custodians, data sources, subject matters relevant to the claims and defenses and the relevant time period and other parameters to limit and guide preservation and production of discoverable information.

1

C.      To further the application of the Fed. R. Civ. 34 requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable.

## II.    DEFINITIONS

A.      "Active Data" or "Active System(s)." Information residing on the direct access storage media that is readily visible to the operating system and/or application software with which it was created, and that is accessible to end-users without the need for restoration or reconstruction. By way of example only, Active Data shall not include deleted, erased, overwritten, fragmented, or corrupted files; server, system or network logs; data stored in random access memory ("RAM") or cache memory; temporary or cache files; internet "cookie files;" data stored in printers, copy machines, or fax machines; or data for which legacy software or hardware is required to access or view the data.

B.      **"Backup Data."** A copy of ESI that serves as a source for recovery in the event of a system problem or disaster, and that is routinely recycled or overwritten on a set schedule for this purpose and is separately stored from Active Data. "Backup Data" also includes information that may be contained on storage media.

C.      "Document" means paper documents or electronically stored information (ESI) existing in any medium from which information can be obtained or translated into reasonably usable form.

D.      "Native File(s)" means ESI in the file type for (or of) the application in which such ESI is normally created, viewed and/or modified

E.      "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation

of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

F.      "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. Acceptable image formats are Group IV Tiffs at 300 DPI for Black and white images and standard jpeg (jpg) images at 600 DPI for images that require color rendering.

G.      "Load file" means an electronic file containing information identifying a set of paper-scanned images or electronically processed files and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load files shall also contain data relevant to the individual documents, such as Metadata, coded data, and OCR or Extracted Text.

H.      "OCR" means the optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

I.      "Extracted Text" means the text extracted from a Native File and includes all header, footer and document body information as well as any other text, such as comments and tracked changes in Microsoft Word documents and notes in Microsoft PowerPoint documents.

## III.    PRODUCTION FORMAT

The Parties shall be required to search for Active Data and/or only ESI residing on Active Systems, provided however that to the extent a custodian's e-mail is saved, in whole or in part, in a .pst or similar archived format on an active system, such archived e-mail shall be deemed to

be Active Data.  In producing documents in the reasonably usable form described herein, the Parties shall use reasonable efforts to comply with the terms of this production format.  In the event a party determines that it cannot materially comply with any requirement herein, it shall disclose its inability to comply and parties shall meet and confer regarding resolution of the identified issue.

This production format protocol shall only apply to productions occurring after the date of this Stipulation and Order.  Parties shall not be required to reproduce in any other format documents produced in connection with the original lawsuit filed by Plaintiff (Case No. 12-cv-2775-KHV/DJW).  To the extent any party believes there is a need to obtain a copy of a previously produced document in any other format, the parties agreed to negotiate in good faith regarding whether the document will be reproduced.

Productions after the date of this stipulation and order will be produced in accord with the attached ESI Production Protocol.

## IV.   OTHER PROVISIONS

A.     The Producing Party shall identify the source(s) of ESI that contain responsive documents (*e.g.*, custodial files or database productions). Productions otherwise need not include indication of the document request(s) to which a document may be responsive.

B.     If a party objects to a request for production of ESI on the grounds that it is not reasonably accessible, the party shall inform the requesting party why the requested production would impose an undue burden or is unreasonably costly, and afford the party an opportunity to propose an alternative means of compliance with the request, including the requesting party's payment of all or part of the costs of retrieving the information.  The parties shall work with one another in good faith to resolve any issues, disputes or objections that arise in connection with

electronic discovery issues before raising such matters with the court. Issues shall be raised promptly, in writing, and the parties shall have good faith discussions to attempt to resolve the matter. The parties shall use their best efforts to raise any objections or other requests related to a production within ninety (90) days of receipt of that production. In any event, the parties must raise any objections or other issues sufficiently in advance of the close of discovery to permit good faith negotiations to resolve the matter and briefing of any related motion such that the court has a reasonable time to rule thereon prior to the close of discovery.

C.     The inadvertent production of any materials constituting or containing attorney-client privileged information, attorney work product, or confidential information shall be treated in the manner specified in the Protective Order entered in this case, the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

D.     Privilege Logs will be provided by the producing party within sixty (30) days of each production. This log will list documents withheld or redacted in each production effort.

## V.     WEBSITE ALGORITHMS, SOURCE CODE AND DATABASE FORMATS

Based on the allegations that have been asserted, there may be relevant data pertaining to the use of website source code, search algorithms or data stored in database format (e.g. SQL based systems and the like). The parties have agreed to meet and confer in good faith to determine the extent to which this data is relevant. To the extent this data is relevant, the manner in which such data is produced will be considered separate and distinct from paragraphs I – IV above. Parties will discuss these sources with subject experts and agree on the most cost effective way to search and produce this data.

## VI.     SCOPE OF DISCOVERY AND SOURCES FOR PRODUCTION

A.     The presumptive scope of discovery for all identified sources will be July 1st,

2007 to Present.  However, neither party shall be precluded from seeking discovery for periods prior to July 1, 2007.  To the extent a party seeks discovery for a period prior to July 1, 2007, the parties will meet and confer in good faith regarding the scope of any such discovery.  The Parties will confer in good faith to discuss the search protocol to be used to set date parameters for data collection.

B.     All databases or proprietary program sources will be discussed on a case-by-case basis.  Parties will discuss data points available in these systems, the type and format of the available data points and the reasonable searching and production of the relevant data.

C.     Upon the exchange of written discovery by the Parties, the Parties will negotiate and agree to the sources/custodians to be searched, as well as the search terms and combinations that will be applied.

D.     The parties agree to negotiate in good faith regarding the searches to be conducted, being mindful of the costs and expense of the searches to be conducted.  The results of the search term hits will be reviewed for relevance and privilege.  The parties agree to negotiate in good faith to modify any search terms if, upon performing the searches, the terms searched return a disproportionate number of "false" or "junk" hits or if the number of hits returned would result in either party having to incur unreasonable costs or expense in the review or production of the returned documents.

**IT IS SO ORDERED.**

Dated this 11th day of January 2016, at Kansas City, Kansas

 s/ James P. O'Hara
Hon. James P. O'Hara
UNITED STATES MAGISTRATE JUDGE

The parties, through counsel, stipulate to the entry of the foregoing Order:


Date:  January 8th, 2016

By:

 _/s/ Brenna P. Fagan_____
Brennan P. Fagan   KS  #20430
FAGAN EMERT & DAVIS, LLC
730 New Hampshire Street #210
Lawrence, KS 66044
(785) 331-0300 – Phone
(785) 331-0303 – Fax
bfagan@fed-firm.com
and
**SKEPNEK LAW FIRM**
William J. Skepnek
William J. Skepnek, Jr.
One Westwood Rd.
Lawrence, KS 66044
785-856-3100 - Phone
785-856-3099 - Fax
bskepnek@skepneklaw.com
wskepnek@skepneklaw.com
ATTORNEYS FOR PLAINTIFF


 _/s/ David A. Jermann_____
Edward R. Spalty     KS  #70069
David A. Jermann   KS #19686
Kevin W. Prewitt KS # 26209
Armstrong Teasdale LLP
2345 Grand Boulevard
Suite 1500
Kansas City, MO  64108-2617
816.221.3420 (phone)
816.221.0786 (fax)
espalty@armstrongteasdale.com
djermann@armstrongteasdale.com
kprewitt@armstrongteasdale.com
ATTORNEYS FOR DEFENDANT

**ESI PRODUCTION PROTOCOL**

1.     **TIFF Format**: The Parties shall produce ESI in standard Group IV black and white single-page TIFF format at 300 x 300 dpi resolution and 8.5 x 11 inch page size.

     a.     If a color image is produced in black and white, the receiving party, for good cause, may request the producing party to produce the original, color image.

     b.     All documents are to be provided with document level, or multi-page, searchable OCR or Extracted Text files, as described in Section III.B.2 below.

2.     **Text Files**: For each document, a single text file shall be provided along with the image files and metadata. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document was redacted or a hard copy document. In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.

3.     **Bates Numbering:** All images must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, (4) be sequential within a given document, (5) shall not obscure any underlying content on the images

4.  **Time Zone:** When processing ESI, GMT should be selected as the time zone.

5.  **De-NISTing**: Electronic file collection shall be "De-NISTed", removing commercially available operating system and application files contained on the current NIST file list. Identification of NIST list matches shall be through MD5 Hash values.

6.  **Deduplication:** The Parties may globally de-duplicate identical ESI as follows:

    a.  **Electronic Files:** Electronic files shall be de-duplicated based upon calculated MD5 Hash values for binary file content. File contents only will be used for MD5 Hash value calculation.

    b.  **Messaging Files:** Messaging files shall be de-duplicated based upon MD5 Hash values for the message family, including parent object and attachments. For families, the MD5 Hash is created on the combined hash values of the family members.

    c.  **Metadata:** The custodian metadata field of unproduced documents that are duplicates of produced documents shall be provided in the Load Files as a multi-value "OTHER CUSTODIANS" field set forth in TABLE 1.

7.  **Native Files:** The parties agree to produce non-redacted spreadsheets (.csv, .xls, .wks), Microsoft Access databases (.mdb), Power Point presentations and any relevant audio or video files in native format. Documents that are redacted shall be produce in a manner consistent with Paragraphs III.A.1 and III.A.2 above.

9

a.   Any native files that are produced shall be produced with all extracted text and applicable metadata fields set forth in TABLE 1

b.   An image placeholder shall be provided in the image set for each file produced natively.  This place holder should include the text "Document was produced Natively" in the top center position and be endorsed in bottom right hand position with the appropriate bates number.

c.   The native document should be named after the Bates number assigned to the image placeholder.

8.   **Load files**: There shall be two Load files accompanying all productions: one will be the Image Load File and the other will be the Metadata Load File. The specifics of these files are detailed in (a) and (b) below:

a.   <u>Image Load File</u>

i.   Every Document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together in a directory structure with a common key to properly load the data.

ii.  Documents shall be produced in only one image load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

iii. Images will be delivered with an image load file in the IPRO (.LFP) file format.

iv.   The name of the image load file shall mirror the name of the delivery volume (*e.g.*, ABC001.lfp). The volume names shall be consecutive (*i.e.*, ABC001, ABC002, *et. seq.*)

v.   The load file shall contain one row per Tiff image.

vi.   Every image in the delivery volume shall be contained in the image load file.

vii.   The image key shall be named the same as the Bates number of the page. Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.), *i.e.*, a separate volume shall be created for each piece of media delivered.

b.   <u>Metadata Load File</u>

i.   Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension.

ii.   The metadata load file shall use Concordance default delimiters.

iii.   Data for documents shall be produced in only one data load file throughout the productions, unless that document is noted as being a replacement document in the Replacement field of the data load file.

iv.   The first line of the .DAT file must be a header row identifying the field names.

11

    v.       All date fields shall be produced in "mm/dd/yyyy hh:mm:ss AM" format.

    vi.     A carriage-return line-feed shall be used to indicate the start of the next record.

    vii.    Load files shall not span across media (*e.g.*, CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.

    viii.   The name of the metadata load file shall mirror the name of the delivery volume (*i.e.*, ABC001.dat).

    ix.    The volume names shall be consecutive for each produced source. (*i.e.*, ABC001, ABC002, *et. seq.*).

9.    **Metadata fields**: ESI shall be produced to the requesting party as Static Images together with a Load file that contains the available Metadata fields described below on the document level, except as set forth in Section III.B above. If available and not privileged, the following fields associated with each electronic document including the body of the document, shall be produced in the appropriate Load/Unitization file:

<u>**TABLE 1:  Metadata Field List**</u>

| Name | Field Type | Length | Description |
|---|---|---|---|
| DocID | Fixed-Length Text | 50 | Unique document Bates# or populate with the same value as Start Bates (DocID  BegDoc#) |
| BegDoc# | Fixed-Length Text | 50 | Start Bates (including prefix) No Spaces |

| EndDoc# | Fixed-Length Text | 50 | End Bates (including prefix) No Spaces |
|---|---|---|---|
| Page Count | Whole Number | | Page Count |
| GroupID | Fixed-Length Text | 50 | The identifier of a document's family group.  The group identifier repeats for all records in the group. |
| AttachBeg | Fixed-Length Text | 255 | Start Bates number of first attachment |
| AttachEnd | Fixed-Length Text | 255 | End Bates number of last attachment |
| Attachment Range | Fixed-Length Text | 255 | Start Bates number and end bates number |
| BCC | Long Text | | Blind Carbon Copy |
| CC | Long Text | | Carbon Copy Recipients |
| Custodian | Single Choice | | Custodian/Source |
| Conversation Index | Long Text | | E-mail thread identification example: 01C72AC4CB0FC3953C5FA8E149389B522EFF595EF9FB |
| Document Date | Date | | MM/DD/YYYY - Document Date |
| Document Date Created | Date | | MM/DD/YYYY - Document Date Created |
| Document Date Modified | Date | | MM/DD/YYYY - Document Date Last Modified |
| Document Title | Long Text | | |
| Document Type | Fixed-Length Text | 255 | |
| E-mail Date Received | Date | | |
| E-mail Date Sent | Date | | |
| From | Fixed-Length | 500 | Author |

| | Text | | |
|---|---|---|---|
| E-mail Subject | Fixed-Length Text | 255 | Subject/Document Title |
| E-Mail Time Received | Fixed-Length Text | 50 | Time E-mail Received |
| E-mail Time Sent | Fixed-Length Text | 50 | Time E-mail Sent |
| To | Long Text | | Recipient |
| Keywords | Multiple Choice | | |
| FileSize | Fixed-Length Text | 50 | File Size |
| Md5Hash | Fixed-Length Text | 255 | Hash value (used for deduplication or other processing) |
| Native File Extension | Fixed-Length Text | 255 | |
| Native File Name | Fixed-Length Text | 255 | Name of file as it appeared in its original location |
| Privilege | Multiple Choice | | |
| Recipient | Fixed-Length Text | 255 | |
| Record Type | Fixed-Length Text | 255 | File, E-mail, Attachment |
| Software | Fixed-Length Text | 255 | Application used to create native file (e.g.) Excel, Outlook, Word |
| Textfile | Fixed-Length Text | 255 | Current file path to location of the text file. |
| ThreadID | Fixed-Length Text | | A unique ID assigned to each message thread. Example: |

| | | | 00001701 |
|---|---|---|---|

10. **Embedded Objects:**  Objects embedded in Microsoft Office and .RTF shall be extracted as separate documents and produced as attachments to the document.

11. **Compressed files:**  Compression file types (i.e., .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

12. **Suppressed Metadata:** The following metadata fields may be suppressed for documents produced with redactions: FILENAME, TITLE, and SUBJECT. If additional fields are redacted for privilege, these fields shall be identified on the privilege log.]