IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LENEXA HOTEL, LP, )
)
       Plaintiff, )
) CIVIL ACTION
v. )
) No. 15-9196-KHV
HOLIDAY HOSPITALITY )
FRANCHISING, INC., )
)
       Defendant. )
)

**MEMORANDUM AND ORDER**

Lenexa Hotel, LP brings suit against Holiday Hospitality Franchising, Inc. ("Holiday Franchising") for breach of contract, breach of implied duty of good faith and fair dealing, breach of fiduciary duty and declaratory judgment.[1] This matter is before the Court on <u>Holiday Hospitality Franchising, LLC's Motion To Dismiss</u> (Doc. #3) filed August 31, 2015. For the following reasons, the Court overrules defendant's motion.

**Legal Standards**

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. <u>Id</u>. at 679–80; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.

---

[1] The case is set for trial beginning September 11, 2017. On April 18, 2016, the magistrate judge entered an order that stayed discovery pending the Court's ruling on defendant's motion to dismiss. <u>See</u> Order (Doc. #20).

544, 555 (2007).  To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991).  Plaintiff bears the burden of framing its complaint with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim when it pleads factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.  Iqbal, 556 U.S. at 678.  Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242. 1248 (10th Cir. 2008) (citing Phillips v. County of Allegheny, 515 F.3d 225, 232–33 (3d Cir. 2008)).

## Case History

On December 10, 2012, plaintiff filed suit against Holiday Franchising in Case No. 12-2775-KHV in this Court.  In that case, plaintiff asserted claims for breach of contract, breach of implied duty of good faith and fair dealing and declaratory judgment.  See First Amended

Complaint (Doc. #6) in Case No. 12-2775-KHV.  In Count I, plaintiff asserted that Holiday Franchising breached its obligations under a licensing agreement by failing to (1) provide plaintiff access to the Holiday Franchising reservations service, (2) provide marketing and advertising and (3) permit plaintiff to use Holiday Franchising's marketing, reservation and management system as defined in the licensing agreement.  Id. at 22-23.  In Count II, plaintiff asserted that because Holiday Franchising had failed to provide "meaningful reservation services," it breached the implied covenant of good faith and fair dealing.  Id. at 23–24.  In Count III, plaintiff sought a declaratory judgment that it had substantially complied with its obligations under the licensing agreement and/or did not have to perform in light of Holiday Franchising's breach of the agreement.  Id. at 25.

Holiday Franchising filed a motion to dismiss asserting that plaintiff had failed to state a claim upon which the Court could grant relief.  See Memorandum In Support Of Holiday Hospitality Franchising Inc.'s Motion To Dismiss Plaintiff's First Amended Complaint For Failure To State A Claim (Doc. #8) filed February 1, 2013 in Case No. 12-2775-KHV.  Specifically, Holiday Franchising asserted that plaintiff (1) had failed to identify a specific provision of the license agreement which Holiday Franchising had breached, (2) could not assert a claim for breach of implied duty of good faith and fair dealing and (3) did not allege facts which gave rise to a case or controversy and therefore could not obtain declaratory relief.  Id. at 5, 9-10.  On September 3, 2013, the Court overruled the motion.  See Memorandum and Order (Doc. #18) in Case No. 12-2775-KHV.  The Court rejected Holiday Franchising's assertion that plaintiff had failed to identify a specific provision of the license agreement which Holiday Franchising had breached.  Id. at 10.  The Court found that plaintiff had sufficiently stated claims that by failing to provide reservation, marketing and advertising services, Holiday Franchising

had breached its obligations under the license agreement. Id. at 11.

On August 20, 2014, the parties jointly filed a motion to dismiss the case so that they could attempt to settle the matter out of court.[2] Joint Motion To Dismiss Without Prejudice Under Rule 41 (Doc #53) in Case No. 12-2775-KHV at 2. The parties asked the Court to enter an order which dismissed the claims subject to certain terms and conditions, including a condition that if plaintiff refiled the same claims in this Court, the Court would incorporate in the new case all motions and orders filed in the previous case, Case No. 12-2775-KHV. Id. On August 28, 2014, the Court entered an order of dismissal which included the parties' requested language, i.e. that all motions and orders filed in Case No. 12-2775-KHV shall be incorporated in any subsequent case in which the parties refiled their claims before this Court. Order Of Dismissal Without Prejudice (Doc #54) in Case No. 12-2775-KHV at 1-2.[3]

---

[2] The same day, the parties entered into a tolling agreement. The tolling agreement provided that if plaintiff later asserted claims that were "identical" to the claims asserted in Case No. 12-2775-KHV, Holiday Franchising would not file a motion to dismiss the claims. Tolling Agreement, Exhibit 4 to Memorandum In Support (Doc. #4) filed August 31, 2015.

[3] The order of dismissal states as follows:

[T]he Court hereby . . . dismisses this action without prejudice, and with the following terms and conditions should either party refile its claims in a subsequent proceeding before this Court (a "Refiled Case"):
 (1) Any and all discovery conducted in this case can be used in the Refiled Case[.]
 (2) The parties shall immediately resume discovery upon the filing of the Refiled Case. Within 30 days of the filing of the Refiled Case, the parties shall respond to any written discovery that was outstanding as of the date of dismissal of this proceeding. Defendant shall be permitted to take the depositions of Stephen Craig, Mark Ely and Jerry Albert prior to plaintiff or Stephen Craig taking any depositions of Defendant's employees. Plaintiff and Stephen Craig shall also be prohibited from re-deposing any of the witnesses deposed in this proceeding, except as to complete the deposition of Ann Glover.

(continued…)

On August 4, 2015, plaintiff filed its claims in this case. Complaint (Doc. #1). As noted, plaintiff asserts claims for breach of contract, breach of implied duty of good faith and fair dealing, breach of fiduciary duty and declaratory judgment. In Count I, plaintiff asserts that Holiday Franchising breached its obligations under the licensing agreement by failing to (1) provide plaintiff access to Holiday Franchising reservations services, (2) provide marketing and advertising services and (3) permit plaintiff to use the "System." Id. at 30-31; see also Plaintiff's Memorandum In Opposition To Defendant's Motion To Dismiss ("Memorandum In Opposition") (Doc. #6) filed September 21, 2015 at 8. In Count II, plaintiff asserts that because Holiday Franchising failed to provide "meaningful reservation services," it breached the implied duty of good faith and fair dealing. Complaint (Doc. #1) at 31–32. In Count III, plaintiff asserts that by actions or inactions that have "denied [plaintiff] the fruits of its License Agreement," Holiday Franchising has breached its fiduciary duty to plaintiff. Id. at 33. In Count IV, plaintiff seeks a declaratory judgment that it has complied with its obligations under the license agreement and/or that because of Holiday Franchising's breach of the license agreement, plaintiff is excused from performance thereunder.[4] Id. at 34-35.

---

(…continued)
    (3) All motions and orders in this case shall be incorporated in the Refiled Case, and the parties retain and preserve all appellate rights with regard to any Court orders entered in this case.

Order of Dismissal Without Prejudice (Doc. #54) in Case No. 12-2775-KHV at 1-2.

[4] In the complaint, plaintiff labeled as Count III both the breach of fiduciary duty claim and the request for declaratory judgment. Complaint (Doc. #1) at 32–34. The Court refers to the fiduciary duty claim as Count III and the declaratory judgment claim as Count IV.

**Factual Assertions**

Plaintiff alleges the following facts.

Holiday Franchising operates over 700,000 hotel rooms worldwide. Complaint (Doc. #1) ¶ 27. Its three major brands are (1) InterContinental, a luxury brand marketed to well-traveled, affluent guests; (2) Crowne Plaza, an upscale brand offering full service facilities targeted to upscale business, conference and leisure travelers; and (3) Holiday Inn, a midscale brand offering full service with a reputation for value. Id.

Plaintiff is a Kansas limited partnership that owns and operates a full-service hotel located at 12601 West 95th Street (off Interstate 35) in Lenexa, Kansas (the "Hotel"). Id. ¶ 19. From 1971 to 1984, the Hotel operated as a Holiday Inn with 112 rooms. Id. ¶ 30. In 1984, it expanded to 297 rooms and converted to a Holidome Indoor Recreation Center. Id. In 2003, the Hotel converted to a Radisson. In 2009, it changed to a Crowne Plaza with 257 guest rooms on four floors. Id. ¶¶ 19, 30.

At all relevant times, the Hotel has been one of two Crowne Plaza hotels operating in an area which Holiday Franchising defines as the Kansas City, Missouri-Kansas Metropolitan Statistical Area ("Kansas City MSA"). Id. ¶¶ 1, 6. The other Crowne Plaza hotel is located in downtown Kansas City, Missouri, about 14 miles from the Hotel. Id. ¶ 6. An InterContinental Hotel operates on the Country Club Plaza in Kansas City, Missouri. Id. Together, these hotels are the only Holiday Franchising upscale or luxury hotels which operate in the Kansas City MSA. Id.

In early 2007, when the Hotel operated as a Radisson hotel, plaintiff contemplated converting it to another brand. Id. ¶ 31. Stephen Craig, a limited partner in plaintiff, and William Stuckeman, plaintiff's executive, had numerous conversations with representatives of

Holiday Franchising.  Id. ¶¶ 13, 31.  Because converting the Hotel to a Crowne Plaza would cost millions of dollars and require hundreds of thousands dollars in annual royalties, Craig insisted on assurances that the Holiday Franchising reservations system would generate sufficient customer demand to justify the investment.  Id. ¶ 32.  Craig had extensive conversations and communications with Holiday Franchising representatives regarding the ability of Holiday Franchising to attract out-of-town business travelers and group demand to the Hotel.  Id. ¶ 34.  Holiday Franchising repeatedly represented that its reservation system – supported by the internet, call centers and travel booking system – would market the Hotel as one of only three Holiday Franchising upscale or luxury hotels in the Kansas City market.  Id.  Holiday Franchising represented that its marketing and internet experts would develop a plan to create visibility for the Hotel in all relevant marketing channels.  Id.

In August of 2007, Stuckeman made it clear that the key issue for plaintiff was whether Holiday Franchising could demonstrate the ability to generate through its reservations system corporate transient and group demand for the Hotel.  Id. ¶ 37.  Holiday Franchising representatives, Keith Biumi and Mike FitzMaurice,[5] represented that Holiday Franchising internet experts would evaluate the Kansas City market and strategically pick key words to identify the Hotel as an upscale Kansas City hotel.  Id. ¶ 38.  Holiday Franchising represented that it would buy advertising words designed to maximize the Hotel's internet visibility and bring the Hotel to the forefront of internet search engines used by business travelers and upscale consumers, as well as travel sites like Hotels.com, Expedia and Travelocity.  Id.  Holiday Franchising repeatedly touted that based on the Crowne Plaza brand, the Hotel would realize

---

[5] Biumi served as Regional Vice President, Upscale Franchising and Business Development of Holiday Franchising.  Complaint (Doc. #1) ¶ 31.  FitzMaurice served as Director.  Id. ¶ 36.

immediate and significant benefits from the central reservations system. Id. ¶ 39.

Holiday Franchising recognized that the Hotel operated in the same market as the Crowne Plaza hotel in downtown Kansas City. Id. ¶ 36. Holiday Franchising represented to plaintiff that with a Crowne Plaza hotel located in downtown and an InterContinental hotel located on the County Club Plaza, the Hotel would benefit from cross-marketing within the Kansas City market. Id. Holiday Franchising represented that it would support a relationship between the Hotel and the other hotels to collectively enhance and coordinate efforts between the Holiday Franchising upscale and luxury brands in Kansas City. Id.

In May of 2008, plaintiff and Holiday Franchising signed a ten-year franchise licensing agreement. Under the agreement, plaintiff paid Holiday Franchising $74,000, committed to spend over $7 million to convert the Hotel to a Crowne Plaza and agreed to pay Holiday Franchising a percentage of all revenues generated over the ten-year franchise term. Id. ¶ 5. As a condition of the license agreement, plaintiff agreed to a Property Improvement Plan ("PIP") which required it to spend millions of dollars to renovate the Hotel. Id. ¶ 45. Before executing the license agreement, Holiday Franchising provided a Uniform Franchise Offering Circular ("UFOC") which confirmed representations that Holiday Franchising had previously made regarding access to a central reservation system, advertising and marketing, and Holiday Franchising's ability to drive demand to the Hotel. Id. ¶ 47. The license agreement incorporates by reference a Franchise Disclosure Statement ("FDS") and a Brand Standards Manual ("BSM"). Id. ¶¶ 49, 51. Together, the license agreement, FDS, BSM and UFOC define the relationship between Holiday Franchising and all hotels in the "System," including the Hotel. Id. ¶ 52. Holiday Franchising drafted the license agreement and FDS for uniform use throughout its Crowne Plaza franchise system, i.e. the System. Id. ¶ 50. The documents set forth terms and

conditions that are not subject to individualized negotiations by individual franchisees such as the Hotel. Id. The license agreement states that the "System" includes "access to a reservation service operated in accordance with specifications established by [Holiday Franchising]." Id. ¶ 54. To hotels such as the Hotel, participation in the Holiday Franchising reservations system is the single most valuable benefit obtained through the franchise agreement. Id. ¶ 55.

On May 6, 2009, after spending millions of dollars in upgrades, the Hotel opened as a Crowne Plaza hotel. Id. ¶ 101. At that time, the Hotel became dependent on Holiday Franchising's reservations system, and its revenues dropped. Id. ¶ 7. Holiday Franchising knew that it was important to promote the Hotel as being located in the Kansas City market. Id. ¶ 102. Nevertheless, Holiday Franchising failed to take steps to associate the Hotel with key words to identify it in the Kansas City market. Id. ¶ 103. Instead, Holiday Franchising took steps to disassociate and hide the Hotel's presence in the Kansas City market. Id. ¶¶ 42, 104. Holiday Franchising's actions caused a significant reduction in the Hotel's visibility within reservations channels and inhibited the ability of potential guests to locate the Hotel in the Kansas City market. Id. ¶ 42.

In July of 2009, plaintiff noticed that the Holiday Franchising reservations system had sent almost no business to the Hotel. Id. ¶ 117. Plaintiff investigated the matter and discovered that for guests looking for a Crowne Plaza hotel in Kansas City, reservations agents consistently failed to identify the Hotel. Id. ¶ 118.

In late 2009, plaintiff asked Holiday Franchising to identify the Hotel as a Kansas City hotel. Id. ¶ 113. Holiday Franchising responded that it was working to resolve any issues that plaintiff believed were hindering the growth of the Hotel. Id. ¶ 115. Despite assurances from Holiday Franchising, the Hotel remained practically invisible on internet searches for Kansas

City hotels.  Id. ¶ 116.  Instead, potential guests could locate the Hotel only by searching for a Crowne Plaza located in Lenexa, Kansas.  Id.

Throughout 2010 and 2011, plaintiff continued to press Holiday Franchising to remedy the problem.  Holiday Franchising made no significant changes.  Id. ¶¶ 124-127.

In 2014, plaintiff discovered that in 2008, the Crowne Plaza downtown hotel objected to Holiday Franchising opening the Hotel as a Crowne Plaza because of its close proximity to downtown.  Id. ¶ 129.  Unbeknownst to plaintiff, before the parties entered into the license agreement, Holiday Franchising committed to the Crowne Plaza downtown hotel that it would inhibit the Hotel from competing for guests by identifying the Hotel as in "different cities and states" from the downtown hotel.  Id. ¶ 10.  In fact, Holiday Franchising had promised the Crowne Plaza downtown hotel a protected territory against competition from the Hotel.  Id. ¶ 81.  Holiday Franchising concealed this commitment from plaintiff.  Id. ¶¶ 82, 113, 115, 124-126.

In the license agreement, Holiday Franchising contractually represented to plaintiff that it "does not grant franchises for exclusive areas or territories."  Id. ¶¶ 11, 44.  Based on this statement, plaintiff reasonably believed that it had an equal right to compete with other Holiday Franchising hotels in the Kansas City market and that Holiday Franchising would not give other licensees a competitive advantage or preferential treatment within its reservations system.  Id. ¶ 79.  In light of Holiday Franchising's undisclosed agreement to protect the Crowne Plaza downtown hotel by mitigating the impact of competition from the Hotel, the representation in the license agreement was false.  Id. ¶¶ 12, 44.

At all relevant times, Holiday Franchising had exclusive control of the reservations system.  Id. ¶¶ 4, 70-71.  Plaintiff had no ability to control the reservations system and was completely dependent on Holiday Franchising as its reservations agent.  Id. ¶¶ 4, 73-77, 83-95.

Because of its commitment to mitigate competition to the downtown Crowne Plaza hotel, Holiday Franchising has never appropriately identified the Hotel on the internet with descriptors to make it visible to potential guests looking for a Kansas City hotel. Id. ¶ 12. Holiday Franchising has refused plaintiff's repeated requests to use URL addresses and geographic identifiers that would associate the Hotel with Kansas City. Id. ¶¶ 13-14. Plaintiff has conducted independent research that demonstrates a chronic and systemic failure by Holiday Franchising to identify the Hotel as a potential option for guests seeking a Crowne Plaza hotel in the Kansas City market. Id. ¶¶ 8-9.

The primary and essential benefit of the licensing agreement for plaintiff was to use visibility generated by Holiday Franchising's reservations system and marketing resources to drive demand to the Hotel. Id. ¶ 15. Holiday Franchising's actions and inactions have destroyed this benefit. Id. Holiday Franchising has continued to ignore its most basic contractual obligation, i.e. to make the Hotel visible to potential customers by effectively marketing and promoting the Hotel through its marketing channels including call centers, websites and reservations system. Id. ¶ 17. As a result of Holiday Franchising's reservations and marketing failures, the Hotel is one of the worst performing Holiday Franchising hotels in the Kansas City MSA. Id. ¶ 131.

Holiday Franchising asserts that plaintiff has not completed its obligations under the PIP. Id. ¶ 16. Plaintiff has continued to renovate and make improvements to the Hotel, but Holiday Franchising's misconduct has crippled its ability to generate cash flow and fully complete the renovation and upgrade process. Id. ¶¶ 16, 134. In light of the revenue problems caused by Holiday Franchising's actions and inactions, plaintiff has substantially complied with the requirements of the PIP. Id. ¶ 137.

## Analysis

As noted, plaintiff asserts claims for breach of contract (Count I), breach of implied duty of good faith and fair dealing (Count II), breach of fiduciary duty (Count III) and declaratory judgment (Count VI). Defendant seeks to dismiss all claims. Defendant asserts that plaintiff cannot prevail because it (1) has not identified breach of a specific contractual obligation; (2) therefore cannot assert a claim for breach of implied duty of good faith and fair dealing; (3) has not alleged facts sufficient to support a fiduciary relationship; and (4) has not alleged an actual case or controversy to support declaratory relief. Holiday Hospitality Franchising, LLC's Memorandum In Support Of Its Motion To Dismiss ("Memorandum In Support") (Doc. #4) filed August 31, 2015 at 11-14. The parties agree that Georgia law governs plaintiff's claims. Id. at 6; Memorandum In Opposition (Doc. #6) at 7.

**I.  Count I: Breach Of Contract**

In Count I, plaintiff asserts that defendant breached its obligations under the licensing agreement by failing to (1) provide access to reservations services, (2) provide marketing and advertising services and (3) permit it to use the System. Complaint (Doc. #1) ¶ 141. Defendant asserts that because plaintiff has not identified breach of any specific contractual obligation, it cannot prevail on the claim. See Memorandum In Support (Doc. #4) at 9-14.

Plaintiff asserts that because its breach of contract claim is "virtually identical" to its claim in Case No. 12-2775-KHV, the Court's order in that case overruling defendant's motion to dismiss applies to defendant's motion in this case. See Memorandum In Opposition (Doc. #6) at 7-11. As noted, in Case No. 12-2775-KHV, the Court dismissed plaintiff's claims subject to the condition that if either party refiled its claims, "[a]ll motions and orders in [Case No. 12-2775-KHV] shall be incorporated in the Refiled Case." Order of Dismissal Without Prejudice

(Doc. #54) in Case No. 12-2775-KHV at 2. In Case No. 12-2775-KHV, the Court overruled defendant's motion to dismiss plaintiff's claims. See Memorandum And Order (Doc. #18) in Case No. 12-2775-KHV. Pursuant to the Court's order of dismissal in Case No. 12-2775-KHV, to the extent plaintiff asserts the same claims in this case, the previous ruling would apply.

As noted, in this case, plaintiff asserts that defendant breached its obligations under the licensing agreement by failing to (1) provide access to reservations services, (2) provide marketing and advertising services and (3) permit plaintiff to use the System. Complaint (Doc. #1) ¶ 141. In the previous case, plaintiff asserted similar claims, i.e. that defendant breached its obligations under the license agreement by failing to (1) provide access to its reservation services, (2) provide marketing and advertising and (3) permit plaintiff to use defendant's marketing, reservation and management system as defined in the licensing agreement. See First Amended Complaint (Doc. #6) in Case No. 12-2775-KHV at 22–23.

Defendant argues that in this case, plaintiff asserts "new theories of contractual breaches" and therefore the Court's previous ruling does not apply. Memorandum In Support (Doc. #4) at 8. Specifically, defendant contends that in this case, plaintiff asserts new allegations that defendant failed to promote it as a "Kansas City hotel" and instead promoted it as a "Lenexa" hotel. See id. at 8-9. Contrary to defendant's assertions, in the previous case, plaintiff also asserted that defendant breached its agreement to promote plaintiff as an "upscale Kansas City Metropolitan hotel" and instead promoted it primarily as a "Lenexa, Kansas hotel." First Amended Complaint (Doc. #6) in Case No. 12-2775-KHV at ¶¶ 3, 7-9. It appears that this case newly alleges the reason for alleged conduct, i.e that Holiday Franchising made a secret commitment to the Crowne Plaza downtown hotel to mitigate competition by the Hotel. See Complaint (Doc. #1) ¶¶ 10-14, 41-43, 81-82, 104, 113, 115, 124-26. Plaintiff asserts that any

differences in factual allegations are merely the result of additional details that it learned through discovery in the previous case. See Memorandum In Opposition (Doc. #6) at 7. The Court has carefully reviewed the complaints in both cases and finds that any changes in factual assertions are insignificant to the substance of the breach of contract claim.[6] Accordingly, pursuant to the terms of dismissal in Case No. 12-2775-KHV, the Court's previous ruling overruling defendant's motion to dismiss applies here. Accordingly, the Court overrules defendant's motion to dismiss Count I, i.e. the breach of contract claim.

Even addressing the merits of defendant's motion, the Court reaches the same result. Based on the same reasoning as the order in Case No. 12-2775-KHV, the Court concludes that assuming plaintiff's allegations to be true and construing them in the light most favorable to plaintiff, the complaint "lists a number of obligations that defendant has under the License Agreement and alleges that defendant has breached those obligations by failing to provide reservation, marketing and advertising services, and not permitting plaintiff to use the System for which plaintiff provides consideration."[7] Memorandum And Order (Doc. #18) in Case No. 12-

---

[6] In Case No. 12-2775-KHV and in this case, plaintiff alleged breach of contract based on failure to provide "meaningful" access to reservation services. In identical language, both complaints allege as follow:

> By the conduct described above, Defendant has breached the express terms of the contract including failing to provide meaningful reservation services through the [Central Reservation Office] and internet, failing to address concerns repeatedly raised by Plaintiff, and through other actions and inactions more fully described above.

First Amended Complaint (Doc. #6) in Case No. 12-2775-KHV at 23; Complaint (Doc. #1) at 31.

[7] Defendant asserts that only the license agreement defines the terms of the parties' contractual relationship. See Memorandum In Support (Doc. #4) at 11-14. In ruling on defendant's motion, the Court must accept as true any plausible facts which plaintiff alleges. See Iqbal, 556 U.S. at 679. Here, plaintiff alleges facts which plausibly support an inference that
(continued…)

2775-KHV at 11.  Accordingly, the Court overrules defendant's motion to dismiss Count I.

## II.    Count II: Breach Of Implied Duty Of Good Faith And Fair Dealing

In Count II, plaintiff asserts that because defendant failed to provide "meaningful reservation services," it breached the implied duty of good faith and fair dealing.  Complaint (Doc. #1) at 31–32.  Defendant asserts that because plaintiff has not identified breach of any contractual obligation, it cannot prevail on the claim.  See Memorandum In Support (Doc. #4) at 9-14.  As a preliminary matter, the Court finds that the claims which plaintiff asserts in Count II are substantially the same as those which it asserted in Case No. 12-2775-KHV.[8]  Accordingly, the Court's previous order overruling defendant's motion to dismiss applies to defendant's motion here.  See Memorandum and Order (Doc. #18) at 11–12.  Alternatively, for reasons stated, the Court rejects defendant's assertion that plaintiff has not properly stated a claim for breach of contract.  See Memorandum In Support (Doc. #4) at 15.  The Court therefore overrules defendant's motion to dismiss Count II.

## III.   Count III: Breach Of Fiduciary Duty

In Count III, plaintiff asserts that by actions or inactions that have denied it "the fruits of its License Agreement," defendant has breached fiduciary duties owed to plaintiff.  Complaint (Doc. #1) ¶ 154.  Defendant asserts that plaintiff has not alleged facts sufficient to support an inference that a fiduciary relationship existed between the parties.  See Memorandum In Support

---

(…continued)
multiple documents and representations define the parties' contractual relationship, see Complaint (Doc. #1) ¶¶ 11, 36-39, 44, 49-52, and that defendant has breached its obligations thereunder, see id. ¶¶ 12, 44, 103.

[8]     As noted, in the previous case, plaintiff asserted that because Holiday Franchising failed to provide "meaningful reservation services," it had breached the implied covenant of good faith and fair dealing.  Amended Complaint (Doc. #6) in Case No. 12-2775-KHV at 23-24.

(Doc. #4) at 15-19. Specifically, defendant asserts that as a matter of law (1) under Georgia law, a franchisor does not owe a fiduciary duty to its franchisee; and (2) under the express terms of the license agreement, no fiduciary relationship exists. See id. at 15-18.[9]

Georgia law imposes a fiduciary relationship, "whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." Ga. Code. Ann. 23-2-58; Wright v. Apt. Inv. & Mgmt. Co., 726 S.E.2d 779, 785 (Ga. Ct. App. 2012). The party asserting a fiduciary relationship has the burden to prove that such a relationship exists. See Automated Solutions Enter., Inc. v. Clearview Software, Inc., 567 S.E.2d 335, 338 (Ga. Ct. App. 2002). No fiduciary duty exists when parties act to further their own individual business objectives, rather than a common business interest. See id. at 338; Allen v. Hub Cap Heaven, Inc., 484 S.E.2d 259, 264 (Ga. App. 1997).

Defendant asserts that as a matter of law, Georgia law does not impose a fiduciary relationship between franchisor and franchisee. See Memorandum In Support (Doc. #4) at 15-17. In support of its argument, defendant cites authority which suggests that the fact of a franchisor-franchisee relationship does not in itself create a fiduciary duty. See id. Defendant cites no authority, however, which supports a conclusion that as a matter of law, a fiduciary duty between franchisor and franchisee can never exist. Here, plaintiff alleges more than the mere fact of a franchisor-franchisee relationship. Plaintiff asserts that defendant exercised a

---

[9] The parties agree that Count III constitutes a new claim, i.e. that in the previous case (No. 12-2775-KHV), plaintiff did not assert a claim for breach of fiduciary duty.

controlling influence over plaintiff's business because (1) it required plaintiff to use a reservations system over which defendant exercised exclusive control, (2) plaintiff's business was entirely dependent on defendant for use of the system and (3) plaintiff and defendant sought to further a common business interest, i.e. to drive business to the Hotel. Complaint (Doc. #1) at 16–18; Memorandum In Opposition (Doc. #6) at 20–23, 25. Accepting plaintiff's allegations as true and construing them in a light most favorable to plaintiff, the complaint sufficiently states a claim for breach of fiduciary duty under Georgia law.

Defendant asserts that under the express terms of the license agreement, no fiduciary relationship exists between the parties. Paragraph 13A of the license agreement states as follows:

> A. No Agency Relationship:
> Licensee is an independent contractor. Neither party is the legal representative nor agent of, or has the power to obligate (or has the right to direct or supervise the daily affairs of) the other for any purpose whatsoever. Licensor and Licensee expressly acknowledge that the relationship intended by them is a business relationship based entirely on and circumscribed by the express provisions of this License and that no partnership, joint venture, agency, fiduciary or employment relationship is intended or created by reason of this License.

Crowne Plaza License Agreement ¶ 13A, Exhibit 1 to Memorandum In Support (Doc. #4).

Plaintiff asserts that the purported contractual disclaimer is ambiguous and contrary to the factual realities of the parties' relationship. See Memorandum In Opposition (Doc. #6) at 26-28. Plaintiff asserts that one could read the disclaimer as stating that the mere fact of the license does not create a fiduciary relationship. See id. at 26. Plaintiff asserts that other provisions of the license agreement establish a special relationship of confidence and trust between the parties with respect to the reservations system. See id. at 26-27.

Defendant cites Georgia cases which have declined to recognize fiduciary duties in cases where a contract explicitly states that it does not create such a duty. Those cases involve

additional facts, however, which demonstrate that the parties were acting to further independent business objectives. See, e.g., Automated Solutions, 567 S.E.2d at 338 (affirming summary judgment that no fiduciary duty existed where contract stated that neither party was agent for other, also pointing to fact that parties acted to further separate business objectives); Allen, 484 S.E.2d at 264 (noting lack of precedent creating fiduciary duty when franchise agreement expressly provided for independent contractor relationship, also noting no factual basis to infer fiduciary relationship regarding transaction at issue, where parties worked to further separate business interests); cf. Jennette v. Nat'l Cmty. Dev. Servs., Inc., 520 S.E.2d 231, 234 (Ga. App. 1999) (affirming bench trial finding that fiduciary relationship existed where defendant acted as agent and had authority to bind plaintiff to contracts; fact that plaintiff hired defendant as independent contractor not dispositive;). On this record, defendant has not shown that as a matter of law that plaintiff cannot prevail on its breach of fiduciary duty claim. The Court overrules the motion to dismiss Count III.

### IV. Count IV: Declaratory Judgment

In Count IV, plaintiff seeks a declaratory judgment that it is in compliance with its obligations under the license agreement and/or is excused from performance because of defendant's breach of the agreement. See Complaint (Doc. #1) at 34–35. Defendant asserts that because plaintiff has failed to state a claim for breach of contract, it cannot prevail on its claim for declaratory judgment. See Memorandum In Support (Doc. #4) at 20. For reasons discussed, the Court finds that plaintiff has alleged facts sufficient to support the breach of contract claim. Accordingly, defendant has not shown that plaintiff cannot prevail on its declaratory judgment claim. The Court overrules the motion to dismiss Count IV.

**IT IS THEREFORE ORDERED** that Holiday Hospitality Franchising, LLC's Motion

To Dismiss (Doc. #3) filed August 31, 2015 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that the magistrate judge shall expedite proceedings to prepare the case for trial beginning September 11, 2017.

Dated this 24th day of May, 2017 at Kansas City, Kansas.

> s/ Kathryn H. Vratil
> KATHRYN H. VRATIL
> United States District Judge